IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EMMANUEL JEAN-PHILIPPE,     :
  Plaintiff,         :
             :
 v.            :  CIVIL ACTION NO. 25-CV-5645
             :
HEATHER ADAMS, *et al.*,     :
  Defendants.      :

**MEMORANDUM**

**SCHMEHL, J. - */s/ JLS***              **MARCH 18, 2026**

Plaintiff Emmanual Jean-Phillipe, an unrepresented litigant, commenced this action by

filing a complaint pursuant to 42 U.S.C. § 1983, asserting, *inter alia*, Fourth Amendment

malicious prosecution claims.  Currently before the Court are Jean-Phillipe's Complaint

("Compl.") (ECF No. 2) and his Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1).[1]

Jean-Phillipe asserts claims against Lancaster County District Attorney ("DA") Heather Adams,

Assistant District Attorneys ("ADA") Travis A. Scott, Todd Brown, Cody Wade, Tiffany

Camarota, Christopher Miller, and Amy Suzanne Muller, Lancaster County Police Officers

Corporal Smith and Jonah Marconi, Former Magisterial District Judge ("MDJ") Edward Tobin,

MDJ Miles Bixler, Lancaster County Court of Common Pleas Judges Dennis E. Reinaker and

---

[1] Also pending are Defendant Danene Sorace's Motion to Dismiss the Complaint (ECF No. 23), and Jean-Phillipe's Motion for Dismissal (ECF No. 24), which the Court construes as a response to Sorace's Motion to Dismiss, a Motion to Dismiss the Complaint filed by the Lancaster County DA and ADAs (ECF No. 30), and a Motion to Dismiss the Complaint filed by Lancaster County Police Officers Smith and Marconi (ECF No. 31).  In light of the Court's disposition of Jean-Phillipe's claims upon statutory screening, the Motions to Dismiss will be denied as moot.

Merrill M. Spahn, Jr., and City of Lancaster Mayor Danene Sorace.[2]  (Compl. at 7.)  For the following reasons, the Court will grant Jean-Phillipe leave to proceed *in forma pauperis.*  Jean-Phillipe's official and individual capacity claims against Tobin, Bixler, Reinaker, and Spahn, will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii), because these Defendants are immune from suit.  His individual capacity claims against DA Adams and ADAs Scott, Wade, Camarota, Miller, and Muller will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii), because these Defendants, too, are immune from suit.  His claims asserting Fourteenth Amendment violations pursuant to *Brady v. Maryland*, 373 U.S. 83 (1961) and violations of the Sixth Amendment's speedy trial provision will be dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  His claims against ADA Brown, Corporal Smith, and Mayor Sorace, and his official capacity claims against these Defendants will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  His claims against Officer Marconi will proceed to service.  Jean-Philippe will be granted the option of proceeding on his claims against Marconi at this time, or filing an amended complaint to address the pleading deficiencies described in the Court's Memorandum.

---

[2] Jean-Phillipe asserts his claim against the Defendants in their official capacities only.  (Compl. at 7.)  For the reasons set forth *infra*, Jean-Philippe's official capacity claims are not plausible. *See* Section III.A.  The Court will liberally construe the Complaint to assert claims against the Defendants in their individual capacities.  *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings." (quotations omitted)); *Coward v. City of Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed event though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).

## I.    FACTUAL ALLEGATIONS[3]

Jean-Phillipe completed the Court's form Complaint for Violation of Civil Rights and supplemented the form with 17 typewritten pages. (*See* Compl.)  The Complaint also includes 11 pages of Exhibits, and, shortly after filing the Complaint, Jean-Philippe filed two additional sets of exhibits totaling more than 1,200 pages. [4]  The Court deems all three filings, taken together, to constitute the Complaint. (ECF No. 2-1.)  The gravamen of Jean-Philippe's claim is that the Defendants subjected him to malicious prosecution which resulted in economic loss and emotional distress, among other injuries.

Jean-Philippe does not describe the events giving rise to his arrest, but the following excerpt from the Affidavit of Probable Cause prepared by Defendant Marconi, which is included with Exhibits to the Complaint, describes the events as follows:

> 14.  On May 20, 2023, at 1329 Hours I was dispatched to a person struck in the area of 101 West Woods Drive Lititz Pa.  On arrival Officers spoke with the patient identified as Roger Steffy.  Steffy stated that an individual in a white sedan pulled onto his property and was taking photos of the school van parked in

---

[3] The factual allegations set forth in this Memorandum are taken from Jean-Phillipe's Complaint (ECF No. 2).  The Court adopts the pagination supplied by the CM/ECF docketing system. Where appropriate, grammar, spelling, and punctuation errors in Jean-Phillipe's pleadings will be corrected for clarity.  Additionally, the Court includes facts reflected in publicly available dockets, of which this Court may take judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim).

[4] *See* ECF No. 7, consisting of 49 pages that appear to include portions of the state court record filed on appeal and ECF No. 8, consisting of more than 1200 pages that appear to include the entire state court record.   The Court notes that a plaintiff may not state a claim by relying solely on exhibits. *See Estate of Egenious Coles v. Zucker, Goldberg & Ackerman*, 658 F. App'x 108, 111 (3d Cir. 2016) ("[W]e cannot fault the District Court for failing to intuit the necessary factual allegations from one of the many exhibits appended to the complaint."); *see also Berkery v. Credit Collection Servs.*, No. 21-3809, 2021 WL 4060454, at *2 (E.D. Pa. Sept. 7, 2021) ("While a court may consider exhibits attached to a complaint, merely attaching exhibits is insufficient to meet the requirement that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.").

his driveway.  He stated that this individual stated to him that he was a private investigator and attempted to drive away from the scene.  Steffy stated that he reached into the individual's vehicle in an attempt to confront and I.D. the driver for police, while this person was backing out, causing him to be thrown into the roadway causing cuts, bleeding and swelling.  The patient also described having shoulder pain.  A broken watch and the patient's glasses could be seen in the roadway.  The patient was identified as Roger Steffy.

15.  The suspect was described as a black male with khaki shorts who was driving a white sedan believed at the time to be a Honda or a Hyundai.

16. Roger Steffy was transported by EMS to Lancaster General Hospital Trauma Center to be evaluated for his injuries.

17.  At 1351 Hours an individual identified as Emmanuel Jean-Philippe called in stating that he was involved in an altercation and that he would like to discuss it with law enforcement.  The address provided to Officers was 620 Wikshire.  Myself and Officer Hahn met Jean-Philippe outside of his residence.  Jean-Philippe described the same incident that had occurred at 101 West Woods Drive.

18.  Jean-Philippe's vehicle was a white 2018 Hyundai Sonata displaying registration KTE0291.  The vehicle had a broken driver's side mirror and some scuff marks along both the drive's side and passenger side of the vehicle.

19.  Myself and Officer Hahn placed Jean-Philippe in handcuffs behind his back and searched his person before placing him in cruiser R14.  Jean-Philippe was then transported to station 86 to be interviewed further regarding the incident.  Jean-Philippe was Mirandized and interviewed by myself and Corporal Smith.

20.  The incident was described to ADA Tiffany Camarota.  The charges decided by ADA Camorata were Aggravated Assault by motor vehicle, Trespassing, recklessly endangering another person, and Accident involving death or personal injury.

21.  Jean-Philippe was processed on the above charges.

(ECF No. 8 at 26-28.)

Jean-Philippe alleges that Officer Marconi, who was the arresting officer, and ADA

Camarota signed the Criminal Complaint and Affidavit of Probable Cause, both dated May 20,

4

2023, thereby initiating legal proceedings against him.[5]  (Compl. at 8.)  The Criminal Complaint included the following charges recommended by Camarota: aggravated assault by vehicle, accident involving death or personal injury, recklessly endangering another person, and criminal trespass/simple trespass.  (*Id*. at 10.)  DA Adams filed the Information on June 26, 2023.  (*Id*. at 8.)  Defendant Smith, at some point leading up to Jean-Philippe's arrest, allegedly commented, "let's just lock him up.  Maybe a judge will send him to a mental health institution or something."  (*Id*. at 8.)

Jean-Philippe concedes that the statements included in the Affidavit of Probable Cause "were based almost entirely on statements which were made by [himself], with the exception of one sentence which was based on a statement made by [Roger Steffy]."  (*Id*. at 9.)  He claims, however, that critical facts were omitted from the Affidavit of Probable Cause.  (*Id*.)  Specifically, he claims that the Affidavit of Probable Cause omits the facts that he was attacked by Steffy, who approached Jean-Philippe's car as he was backing away, reached into the driver's window and tried to grasp Jean-Philippe's neck.  (*Id*. at 10.)  In short, he argues that he was trying to avoid an attack, not injure the other individual involved.  (*Id*.)  He notes, too, that following the incident, he called the police to report it.  (*Id*.)  He also alleges that the document includes misrepresentations, though he does not identify any.  (*Id*.)

Jean-Philippe alleges that the District Attorney's Office went to great lengths to ensure that no preliminary hearing would take place, because if the hearing had occurred, the Commonwealth would have been shown to lack probable cause to pursue the charges against him.  (*Id*.)  Thus, in order to avoid the preliminary hearing in Jean-Philippe's case, ADA Muller

---

[5] Jean-Philippe also argues that the Criminal Complaint and Affidavit of Probable Cause were not signed by MDJ Bixler until the day after his arrest.  (*Id*. at 11.)  Thus, he argues, he was not arrested pursuant to a valid warrant and, therefore, was arrested without probable cause.  (*Id*.)

offered Jean-Philippe placement in an Accelerative Rehabilitation Disposition ("ARD") program
if he would agree to stipulate to the contents of the Criminal Complaint and Affidavit of
Probable Cause.[6]  (*Id*.)  Jean-Philippe, who was represented by counsel, accepted ADA Muller's
offer and waived the preliminary hearing based on his belief that the case would be terminated,
and he would be placed in the ARD program.  (*Id*.)

Jean-Philippe was initially denied placement in the ARD program, allegedly because his
application was misplaced by ADA Wade, but, after filing a motion for a preliminary hearing, he
received the same offer (ARD placement in exchange for waiving a preliminary hearing) from
ADA Scott, who was then assigned to his case.  (*Id*.)  Jean-Philippe again accepted this offer,
although he alleges that it was never properly explained to him that his case would be held over
for trial rather than terminated.  (*Id*.)  He also alleges that he was unable to read the entire
document he signed because MDJ Tobin's hand covered the top portion of the document at the
time it was signed.  (*Id*.)

Jean-Philippe contends that the delays attributable to ADA Wade's misplacement of
paperwork concerning his potential placement in an ARD program, and the denial of his request
for such placement caused the criminal proceedings to continue over an extended period, in
violation of his right to a speedy trial.  (*Id*. at 16.)  He acknowledges, however, that his attorney
entered into an agreement whereby his speedy trial rights were waived pending consideration of
his request for placement in an ARD program, although he denies that he consented to the waiver
of his rights.  (*Id*. at 17.)

---

[6] Jean-Philippe alleges that prior to the scheduled date of the preliminary hearing, he had
contacted both Judge Bixler and the DA's Office by letter identifying the errors he believed were
included in those documents, and thus, they were aware that he believed that those documents
did not reflect the true facts giving rise to his arrest.  (*Id*. at 12.)

Jean-Philippe also alleges that ADA Scott withheld evidence favorable to him, specifically, the recording of a 911 call and statements Jean-Philippe made at his interview at the police station, and that this constitutes a *Brady* violation. (*Id*. at 18-19.) He claims that the portions of the interview that were withheld reflect that, when he was leaving the scene of the alleged crime, he was in fear for his life because he had been attacked by Steffy. (*Id*. at 19.)

On October 2, 2024, while Jean-Philippe's *pro se* motion for a preliminary hearing was pending, ADA Scott *nolle prossed* the criminal case. (*Id*. at 19.) Jean-Philippe contends that the evidence available to support the charges at the beginning of the case was the same as that available at the time the charges were dismissed, establishing that probable cause and supporting evidence were lacking from the time of the institution of the charges against him. (*Id*.) Jean-Philippe contends that because he is black and most of the Defendants are white, discrimination contributed to the initiation and continuation of the charges against him. (*Id*.)

Jean-Philippe alleges that in November 2021, he was acting as campaign manager for Lancaster City mayoral candidate Willie E. Shell, Sr., whose opponent was Defendant Sorace. (*Id*. at 19.) During the campaign, Jean-Philippe received a call from Detective Winters, allegedly employed by the Lancaster County District Attorney's Office, who asked why a political brochure did not include a disclaimer identifying the political party responsible for its production and mailing. (*Id*. at 20.) He claims that the call, which he alleges was intended to harass and scare him, shows intent to prosecute him on the part of Lancaster City and the Lancaster County District Attorney's Office. (*Id*.) He further surmises that because the Chief of Police of Lancaster City answers to Mayor Sorace, "it is more probable than not" that the call came at the direction of Sorace. (*Id*.)

Jean-Philippe asserts Fourth Amendment malicious prosecution claims, a Fourteenth Amendment claim based on an alleged *Brady* violation, and a Sixth Amendment claim based on an alleged speedy trial violation.  (*Id*. at 3, 13-14.)  He seeks money damages.  (*Id*. at 15.)

The publicly available docket in *Commonwealth v. Jean-Phillipe*. CP-36-CR-2428-2023 (C.P. Lancaster) reflects that Marconi arrested Jean-Phillipe on May 21, 2023.  (*Id*.)  He was charged with one count each of aggravated assault by vehicle, accident involving death or personal injury, recklessly endangering another person, and criminal and simple trespass.  (*Id*.)  On June 26, 2023, Jean-Phillipe, represented by La Tasha Cherene Williams, waived his arraignment.  (*Id*.)  On May 1, 2024, Williams was granted leave to withdraw as Jean-Phillipe's counsel.  (*Id*.)  On June 21, 2024, Jean-Philippe moved for a preliminary hearing.  (*Id*.)  On October 2, 2024, the charges against Jean-Phillipe were *nolle prossed*. (*Id*.) On October 23, 2024, Jean-Philippe filed a Notice of Appeal.  (*Id*.)  On September 25, 2025, the Pennsylvania Supreme Court denied his petition for allowance of appeal.  (*Id*.)

## II.    STANDARD OF REVIEW

The Court will grant Jean-Phillipe leave to proceed *in forma pauperis* because it appears that he cannot pay the applicable fees and costs to commence this case.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At this early stage of the litigation, the Court will accept the facts alleged

in the *pro se* Complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As Jean-Phillipe is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.;* s*ee also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support."). Moreover, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Vogt*, 8 F. 4th at 185 (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* Additionally, Section 1915 requires the dismissal of claims for monetary relief brought against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *see also Rauso v. Giambrone*, 782 F. App'x 99, 101 (3d Cir. 2019) (*per curium*) (holding that § 1915(e)(2)(B)(iii) "explicitly states that a court shall dismiss a case 'at any time' where the action seeks monetary relief against a defendant who is immune from such relief").

9

## III.   DISCUSSION

Jean-Phillipe asserts claims based on alleged violations of his constitutional rights.  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### A.   Official Capacity Claims

### 1.   Official Capacity Claims Against Judges

Jean-Philippe asserts official capacity claims seeking money damages against Judges Tobin, Bixler, Reinaker and Spahn, all of whom are employees of the Commonwealth's Unified Judicial System.  The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  Suits against Commonwealth employees acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, see 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as its officials sued in their official capacities, are immune from suits filed in federal court.  Because the Defendant Judges share in the Commonwealth's immunity, the official capacity claims against them are barred.  *See, e.g., Benn v. First Judicial Dist. of Pa.*,

426 F.3d 233, 241 (3d Cir. 2005) (state courts in Pennsylvania share in the Commonwealth's Eleventh Amendment immunity); *Parker v. Lehigh Cnty. Domestic Relation Court*, 621 F. App'x 125, 128 (3d Cir. 2015) (*per curiam*) ("As [Eleventh Amendment] immunity extends to the component districts of Pennsylvania's unified judicial system, it shields the Family Court from . . . suit."). These claims will be dismissed with prejudice.

### 2. Official Capacity Claims Against Lancaster County and City of Lancaster Employees

Jean-Philippe also assets official capacity claims against DA Adams, ADAs Scott, Brown, Wade, Camarota, Miller, and Muller, Police Officers Corporal Smith and Officer Marconi, and Mayor Danene Sorace. (*See* Compl.) Claims against municipal employees named in their official capacity are indistinguishable from claims against the governmental entity that employs them, here, Lancaster County or the City of Lancaster. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Jean-Philippe does not attempt to allege official capacity claims against any of the employing governmental entities.

To state an official capacity/*Monell* claim, a plaintiff must allege that the municipal defendant's policies or customs caused the alleged constitutional violation. *See Monell*, 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman*

11

*v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.*  Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a claim against the City.  *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

Jean-Philippe does not allege that he suffered a constitutional violation due to a policy or custom of Lancaster County or the City of Lancaster.  Therefore, his official capacity claims against the DA, the ADAs, the police officers, and the City of Lancaster Mayor are not plausible and will be dismissed.  Jean-Philippe will be granted leave to amend his official capacity claims.

**B.    *Brady* Claim**

Jean-Philippe alleges that ADA Scott withheld evidence favorable to him, specifically, the recording of a 911 call and statements Jean-Philippe made at his interview at the police station, and that this constitutes a *Brady* violation.  (Compl. at 18-19.)  He claims that the portions of the interview that were withheld reflect that, when he was leaving the scene of the alleged crime, he was in fear for his life because he had been attacked by the alleged victim.  (*Id.* at 19.)  This claim is not plausible.

In *Brady v. Maryland*, the Supreme Court of the United States held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of prosecution."  *Brady*, 373 U.S. at 87.  The Government has an affirmative duty to disclose exculpatory evidence if suppressing it would be "of sufficient significance to result in

12

the denial of the defendant's right to a fair trial." *United States v. Agurs*, 427 U.S. 97, 108 (1976).  "There are three components of a true *Brady* violation: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  "Police officers may be liable under Section 1983 for a Brady violation when, for example, they fail to disclose exculpatory information to a prosecutor." *Handy v. City of Philadelphia*, No. 24-1905, 2024 WL 4309973, at *4 (E.D. Pa. Sept. 26, 2024) (citing *Gibson v. Superintendent of NJ Dep't of L. & Pub. Safety-Div. of State Police*, 411 F.3d 427, 443 (3d Cir. 2005)).  Even assuming Jean-Philippe can satisfy the first two elements of a *Brady* violation, he cannot establish the prejudice element because his case was never tried because the charges were *nolle prossed*.  *See Thompson v. City of Williamsport*, No. 22-1159, 2024 WL 1747645, at *7 (M.D. Pa. Apr. 23, 2024) (dismissing with prejudice § 1983 claim based on alleged *Brady* violation where underlying criminal charges were *nolle prossed*, and plaintiff, thus, "suffered no prejudice to his right to a fair trial").  Accordingly, this claim will be dismissed with prejudice.

### C.    Speedy Trial Claim

Jean-Philippe asserts that "the Defendants" violated his right to a speedy trial.  (Compl. at 18.)  More specifically, he attributes delay in the prosecution of the charges against him to serial offers of placement in an ARD program, and a related request that he waive his right to a speedy trial while he was under consideration for such a program.  (*Id.*)  Given these allegations, the Court understands Jean-Philippe to be asserting his Sixth Amendment speedy trial claims against the employees of the Lancaster County District Attorney's Office who participated in the prosecution of the criminal charges against him.  These claims are not plausible.

13

The Sixth Amendment guarantees the right of an accused "to a speedy and public trial." U.S. Const. amend VI.  However, because the criminal charges against Jean-Philippe were *nolle prossed* prior to trial, he cannot pursue a Sixth Amendment speedy trial claim through a section 1983 action.  *See Young v. City of Hackensack*, No. 04-2011, 2005 WL 1924327, at *2 (D.N.J. Aug. 11, 2005) ("Because plaintiff's case did not go to trial, his right to a speedy trial is not at issue."), *aff'd*, 178 F. App'x. 169 (3d Cir. 2006); *see also Posey v. Swissvale Bor.*, No. 12-0955, 2013 WL 989953, at *12 (W.D. Pa. Mar. 13, 2013) (dismissing Sixth Amendment speedy trial claim in part because plaintiff's criminal charges had been *nolle prossed* and his case dismissed). *Pumba v. Pennsylvania,*, No. 22-2076, 2022 WL 2805522, at *6 (E.D. Pa. July 18, 2022) (dismissing Sixth Amendment speedy trial claim where plaintiff's criminal case had been dismissed) (citing cases).  Jean-Philippe's Sixth Amendment claims will be dismissed with prejudice.[7]

### D.    Claims Against Judges

Jean-Philippe asserts claims against Judges Tobin, Bixler, Reinaker, and Spahn.  (*See* Compl.)  However, these claims may not proceed, because judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction.  *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (*per curiam*); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*).  An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v.*

---

[7] Even if Jean-Philippe's speedy trial claims were not subject to dismissal in light of the *nolle pros* of the charges against him, he would not be entitled to money damages for any such violation. *See Posey*, 2013 WL 989953, at *12 ("[C]ourts have held that as a general matter, monetary damages are not available to a §1983 plaintiff asserting a violation of his Sixth Amendment speedy trial right.") (citations omitted).

*Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).  Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991), or are taken as a result of a conspiracy with others. *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).  Likewise, "grave procedural errors," "conducting a proceeding in an informal and ex parte manner," or acting "unfair[ly] or controversial[ly]" will not defeat absolute judicial immunity.  *Gallas*, 211 F.3d at 769 (citations and internal quotation marks omitted).  Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'"  *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

Jean-Philippe's allegations as to the conduct of the named Judges are brief.  It appears from his allegations that Judge Bixler signed the Police Criminal Complaint (Compl. at 11); Judge Tobin presided over the preliminary hearing, at which Jean-Philippe agreed to waive the hearing in exchange for potential placement in an ARD program (*id*. at 12); and Judge Reinaker allegedly signed the speedy trial waiver, along with ADA Miller and Jean-Philippe's attorney (*id*. at 17).  There are no allegations describing the basis of Jean-Philippe's clams against Judge Spahn, but the publicly available docket in *Commonwealth v. Jean-Philippe* reflects that he was the presiding judge assigned to the case.  *See Commonwealth v. Jean-Philippe*, CP-36-CR-2428-2-23 (C.P. Lancaster).  The allegations describe normal functions in which the named Judges participated in their judicial capacities.  *See, e.g., Friend v. Vann*, 614 F. App'x 593, 596 (3d Cir. 2015) (*per curiam*) ("Friend's allegations against Judge Vann stem from her signing an arrest warrant and presiding over the trial of one of Friend's acquaintances.  These are official acts, which were not taken in the absence of jurisdiction, for which she is immune from suit.");

15

*Mendoza v. Larotonda*, 270 F. App'x 157, 159 (3d Cir. 2008) (*per curiam*) ("Judge Larotonda is immune from suit for issuing the bench warrant against Mendoza because judges enjoy a comparatively sweeping form of immunity for official acts taken in their functional capacity as judges." (internal quotations omitted)); *Coudriet v. Vardaro*, 545 F. App'x 99, 103 n.5 (3d Cir. 2013) (*per curiam*) (judicial immunity applied where plaintiff alleged "that Magistrate Judge Rossi's actions were illegal and unjust during his arraignment, bail hearing, and preliminary hearing"). Indeed, Jean-Philippe does not allege that they acted outside of their judicial roles or without jurisdiction. As such, the Defendant judges are immune and the claims against them will be dismissed with prejudice.

### E.      Claims Against DAs and ADAs

Jean-Philippe asserts claims against DA Adams and ADAs Scott, Brown,[8] Cody Wade, Camarota, Miller, and Muller. (*See* Compl.) However, prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Absolute immunity extends to the decision to initiate a prosecution, *Imbler*, 424 U.S. at 431, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence. *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020). *See also id.* at 164 (3d Cir. 2020) (prosecutors were entitled to immunity from claims

---

[8] Jean-Philippe does not allege any facts describing conduct engaged in by ADA Brown, and the Court, therefore, cannot determine whether he is entitled to immunity. His claims, however, are subject to dismissal, albeit without prejudice, because they are not plausible. *See infra*, Section III.F.

based on allegations "that at hearings and at trial the Prosecutors withheld material exculpatory evidence from defense counsel, the court, and the jury; filed a criminal complaint without probable cause; and committed perjury before and during trial").  Moreover, District Attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth.  *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009).

Absolute immunity can extend to "the duties of the prosecutor . . . involv[ing] actions preliminary to the initiation of a prosecution and actions apart from the courtroom."  *Mancini v. Lester*, 630 F.2d 990, 994 n.6 (3d Cir. 1980) (quoting *Imbler*, 424 U.S. at 431 n.33).  This means prosecutors have absolute immunity from suits challenging their preliminary "strategic decisions," such as whether or not to call a witness, or their decision not to prosecute a case. *Harris v. Krasner*, No. 23-2068, 2024 WL 2861848, at *2 (3d Cir. June 6, 2024), publication ordered, No. 23-2068, 2024 WL 3493020 (3d Cir. July 22, 2024).

With respect to the alleged conduct of these Defendants, Jean-Philippe alleges that ADA Camarota, upon review of the Affidavit of Probable Cause, recommended which charges be filed based on the facts therein, and signed the Police Criminal Complaint.  (*Id*. at 8, 11.)  DA Adams initiated the criminal proceedings against him by filing an Information.  (Compl. at 8.)  Prior to his preliminary hearing, ADA Muller allegedly offered Jean-Philippe placement in an ARD program in return for his acceptance of the Police Criminal Complaint and Affidavit of Probable Cause in an effort to avoid the preliminary hearing, at which, according to Jean-Philippe, the absence of probable cause for the charges would come to light.  (*Id*. at 12.)  Muller allegedly waived his preliminary hearing after Jean-Philippe, upon the recommendation of his attorney, accepted her offer.  (*Id*. at 13-14.)  ADA Scott also allegedly offered Jean-Philippe placement in

17

an ARD program in exchange for waiving a subsequently scheduled preliminary hearing, again, because he, like ADA Muller, believed that a lack of probable cause to support the charges against Jean-Philippe would come to light if the preliminary hearing were held.  (*Id*. at 18.)  Scott also allegedly *nolle prossed* the charges against Jean-Philippe before a preliminary hearing could be held.  (*Id*. at 19.)  He also allegedly advised Jean-Philippe that the recording of the 911 call to the police made immediately after the incident giving rise to Jean-Philippe's arrest was not available at the time Jean-Philippe requested it "because it would have only been available for a year."  (*Id*. at 18.)  Jean-Philippe claims that Scott made this false statement in an effort to hide the call.  (*Id*.)  ADA Wade allegedly misplaced Jean-Philippe's initial ARD application submission, contributing to the delay in the prosecution.  (*Id*. at 17.)  ADA Miller, along with Jean-Philippe's attorney and Judge Reinaker, allegedly signed an agreement waiving Jean-Philippe's right to a speedy trial to allow time for consideration of his placement in an ARD program.  (*Id*. at 17.)

All of the conduct allegedly engaged in by the Lancaster County DA and ADAs involved decisions made in their representation of the Commonwealth concerning the prosecution of the charges against Jean-Philippe – including determination of the charges, filing of the Information, offering ARD, and discontinuing the charges.  Accordingly, these Defendants are entitled to immunity and Jean-Philippe's claims against them will be dismissed with prejudice.

**F.    Claims Against ADA Brown, Corporal Smith, and Mayor Sorace**

As previously stated, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode*, 845 F.2d at 1207.  However, in his Complaint, Jean-Philippe does not include any factual allegations describing any conduct

engaged in by ADA Brown, and has, accordingly, failed to state a plausible claim against him. The claims against Brown will be dismissed without prejudice.

With respect to Defendant Smith, Jean-Philippe alleges only that at some time prior to his arrest, Smith commented, "let's just lock him up.  Maybe a judge will send him to a mental health institution or something." (Compl. at 8.)  He does not allege that Smith was involved in his arrest or the preparation of the Police Criminal Complaint or the Affidavit of Probable Cause that formed the basis for his arrest.  As such, he has not alleged that Smith was personally involved in the initiation or continuation of the charges against him, and, therefore, has not stated a plausible malicious prosecution claim against him.  Jean-Philippe's claims against Corporal Smith will be dismissed without prejudice.

With respect to Mayor Sorace, Jean-Philippe alleges in November 2021, he was acting as campaign manager for Lancaster City mayoral candidate Willie E. Shell, Sr., whose opponent was Defendant Sorace. (Compl. at 19.)  During the campaign, Jean-Philippe received a call from Detective Winters, allegedly employed by the Lancaster County District Attorney's Office, who asked why a political brochure did not include a disclaimer identifying the political party responsible for its production and mailing. (*Id*. at 20.)  He claims that the call, which he alleges was intended to harass and scare him, shows intent to prosecute him on the part of Lancaster City and the Lancaster County District Attorney's Office. (*Id*.)  He further speculates that because the Chief of Police of Lancaster County answers to Mayor Sorace, "it is more probable than not" that the call came at the direction of Sorace. (*Id*.)  He does not allege as a matter of fact that she directed that the call - which occurred nearly two years before the events giving rise to his arrest and prosecution - be placed, or that she was aware of it.  He does not allege that she participated in any manner in his arrest or prosecution, or that she was aware of that either.

19

The Court need not accept as true Jean-Philippe's conclusory or speculative allegations that Sorace's supposed directive that a call be placed regarding a campaign pamphlet somehow, two years later, gave rise to his arrest following an incident in which he admits he was involved. See *Iqbal*, 556 U.S at 678; *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (stating that speculative allegations "fail to cross the line between the conclusory and the factual"). In the absence of factual allegations describing Sorace's personal involvement in any of the events giving rise to the claims asserted in his Complaint, Jean-Philippe has failed to state a plausible claim against her, and these claims will be dismissed without prejudice. Jean-Philippe will be granted leave to file an amended complaint in which he may assert claims against Brown, Smith, and Sorace if he can allege facts describing their personal involvement in the alleged violations of his constitutional rights.

### G.    Claims Against Officer Marconi

Jean-Philippe asserts a Fourth Amendment malicious prosecution claim against Officer Marconi. (*See* Compl.) To state a Fourth Amendment malicious prosecution claim, a plaintiff must plausibly allege that a government official charged him without probable cause, leading to an unreasonable seizure of his person. *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024) (citing *Thompson v. Clark*, 596 U. S. 36, 43, and n.2 (2022)). A malicious prosecution claim under § 1983 has five elements: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). A "favorable termination" occurs when a prosecution ends "without a conviction."

*Thompson*, 596 U.S. at 49 ("In sum, we hold that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence.  A plaintiff need only show that the criminal prosecution ended without a conviction.").

In support of his claim, Jean-Philippe alleges that Marconi prepared the Affidavit of Probable Cause upon which ADA Camarota based her recommendation of the charges to be filed, but that he did so in a manner that omitted crucial information that would have shown that he was acting in self-defense at the time of the incident giving rise to his arrest.  (Compl. at 9.) He claims that Marconi thus initiated the criminal proceedings against him without probable cause.

"A police officer may rely on a judicial determination of probable cause to avoid liability. But, when the police officer obtains such a determination by misrepresenting the facts and pressing forward to secure an arrest warrant for charges that are legally impossible, he cannot escape liability." *Alburg v. Jones*, 784 F. Supp. 3d 775, 791 (E.D. Pa. 2025) (denying summary judgment where evidence revealed that police officer had omitted exculpatory information from warrant presented to magisterial judge).  Moreover, because "prosecutors, rather than police officers, are generally responsible for initiating criminal proceedings," a plaintiff asserting a malicious prosecution claim against an officer must demonstrate that the officer "knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Brockington v. City of Philadelphia*, 354 F. Supp. 3d 563, 569 (E.D. Pa. 2005) (quotation marks omitted); *see also Parker v. Gainey*, No. 23-2102, 2025 WL 2062563, at *7 (W.D. Pa. July 23, 2025) (denying motion to dismiss malicious prosecution claim against police officer who allegedly failed to correct inaccuracies in affidavit of probable cause, thereby

withholding exculpatory information, and noting that "police officers can be held liable for malicious prosecution if they knowingly provide false information, omit information, or fail to provide exculpatory information to the prosecutor.").

Jean-Philippe alleges that Marconi omitted potentially exculpatory information from the Affidavit of Probable Cause.  (Compl. at 9.)  At this early stage, he has alleged sufficient facts to state a plausible claim against Marconi.  *See Ramirez v. Luzerne Cnty.*, No. 25-00942, 2025 WL 3111536, at *20 (M.D. Pa. Nov. 6, 2025) (denying motion to dismiss malicious prosecution claim against officer alleged to have omitted exculpatory facts from affidavit of probable cause) (quoting *Andrews v. Sculli*, 853 F.3d 690, 699 (3d Cir. 2017) (internal citation and quotation marks omitted) ("When an officer submits a sworn affidavit of probable cause, he or she is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists.")).  This claim will be served for a responsive pleading.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Jean-Philippe leave to proceed *in forma pauperis*. Jean-Phillipe's official and individual capacity claims against Judges Tobin, Bixler, Reinaker, and Spahn, will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii), because these Defendants are immune from suit.  His individual capacity claims against DA Adams and ADAs Scott, Wade, Camarota, Miller, and Muller will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii), because these Defendants, too, are immune from suit.  His claims asserting Fourteenth Amendment violations pursuant to *Brady v. Maryland*, 373 U.S. 83 (1961) and violations of the Sixth Amendment's speedy trial provision will be dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  His claims against ADA

Brown, Corporal Smith, and Mayor Sorace, and his official capacity claims against these Defendants will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  His claims against Officer Marconi will proceed to service.  Jean-Philippe will be granted the option of proceeding on his claims against Marconi at this time, or filing an amended complaint to address the pleading deficiencies described in the Court's Memorandum.

An appropriate Order accompanies this Memorandum.

**BY THE COURT:**

*/s/ Jeffrey L. Schmehl*
**JEFFREY L. SCHMEHL**
**United States District Court Judge**